IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TONAE BOLTON<br>5105 East 128th Street<br>Garfield Heights, Ohio 44125<br><br>    Plaintiff,<br><br>  v.<br><br>UNIVERSITY HOSPITALS HEALTH<br>SYSTEM, INC.<br>20800 Harvard Road<br>Highland Hills, Ohio 44122<br><br>  **Serve also:**<br>  University Hospitals Health<br>  System, Inc,<br>  c/o ACFB Incorporated<br>  200 Public Square, Ste. 2300<br>  Cleveland, Ohio 44114<br><br>TERRI ANN WILLIAMS<br>18402 Chagrin Boulevard<br>Shaker Heights, Ohio 44122<br><br>    Defendants. | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES AND**<br>**REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff, Tonae Bolton, by and through underlined counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES

1. Bolton is a resident of the city of Garfield Heights, county of Cuyahoga, state of Ohio.

2. Defendant University Hospitals Health System ("UH") is a domestic corporation that operates a business located at 20800 Harvard Road, Highland Hills, Ohio 44122.

3. UH was at all times hereinafter mentioned an employer within the meaning of Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

4. UH was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

5. Upon information and belief, Defendant Terri Ann Williams is a resident of the city of Shaker Heights, county of Cuyahoga, state of Ohio.

6. Williams made and/or participated in the adverse actions asserted herein.

## JURISDICTION & VENUE

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Bolton is alleging a Federal Law Claim under of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

8. All material events alleged in this Complaint occurred in Cuyahoga County.

9. This Court has supplemental jurisdiction over Bolton's state law claims pursuant to 28 U.S.C. § 1367, as Bolton's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

11. Within two years of the conduct alleged below, Bolton filed a Charge of Discrimination with the Ohio Civil Rights Commission ("OCRC"), Charge No. CLEB4(46700)10072021; 22A-2022-00799 against UH.

12. On or around August 11, 2022, the OCRC issued and mailed a Notice of Right to Sue letter to Bolton regarding the Charge of Discrimination brought by Bolton.

13. Bolton received her Right to Sue letter from the OCRC in accordance with R.C. § 4112.052 - which has been attached hereto as Plaintiff's Exhibit A.

14. Bolton has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

15. Bolton is a former employee of UH.

16. Bolton began working for UH on or around October 9, 2017.

17. UH employed Bolton as a Senior Business Operations Analyst.

18. On or around January 5, 2021, Bolton's daughter passed away.

19. Bolton notified UH of her loss and the need for bereavement leave.

20. UH policy is to allow employees three days of bereavement leave.

21. After the expiration of Bolton's bereavement leave, Bolton was still struggling mentally and emotionally.

22. On or around January 11, 2021, Bolton requested she be allowed to use PTO to extend her leave.

23. Williams was Bolton's direct supervisor.

24. Williams denied Bolton's request to use PTO for additional leave.

25. Kathy LeBrew, the divisional Vice President, heard about Bolton's situation and overruled Williams, instructing Williams to give Bolton a 30 day leave of absence effective immediately.

26. During this time, Bolton was diagnosed with Depression and Post Traumatic Stress Disorder ("Medical Conditions").

27. Bolton's Medical Conditions constitute a mental impairment.

28. Bolton's Medical Conditions substantially impair one or more of her major life activities, including working.

29. Because of her Medical Conditions, Bolton is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

30. Bolton seeks treatment for her Medical Conditions.

31. Bolton has a record of disability.

32. During her employment, Bolton disclosed to UH that she suffered from her Medical Conditions.

33. In the alternative, UH perceived Bolton as being disabled.

34. In the alternative, UH perceived Bolton's Medical Conditions constituted a mental impairment.

35. Despite her actual or perceived disabling conditions, Bolton was still able to perform the essential functions of her job with or without accommodations.
36. Bolton's doctor ordered her off work until March 8, 2021.
37. Bolton utilized leave under the Family and Medical Leave Act ("FMLA").
38. On or around March 8, 2021, Bolton returned to work.
39. Upon her return, Williams assigned Bolton a very complex and intensive assignment on top of her regular job duties. ("Intensive Assignment")
40. The Intensive Assignment was the first extra project Williams ever assigned Bolton.
41. The Intensive Assignment gave Bolton thirty days to create a training regimen for a medical program.
42. Because Bolton did not have the specialist training needed for the Intensive Assignment, she had to learn new software and seek technical assistance from subject matter experts within and outside UH.
43. Williams did not assign an assistant to work with Bolton on the Intensive Assignment, as was Williams' standard practice in these situations.
44. Williams assigned Bolton the Intensive Assignment without providing Bolton with sufficient guidance or support.
45. Williams set Bolton up to fail by assigning her the Intensive Assignment immediately after Bolton used FMLA leave because of her Medical Conditions.
46. The Intensive Assignment caused Bolton severe stress, which exacerbated her Medical Conditions.
47. During one of their regularly scheduled meetings, Bolton told Williams that her Medical Conditions were affecting her day-to-day functioning and asked to be off work on May 4, 2021.
48. Bolton was still approved for intermittent FMLA and had remaining leave.

49. Williams denied Bolton's request to have May 4, 2021, off work despite Bolton's remaining FMLA leave.

50. In another regularly scheduled meeting, Bolton expressed to Williams that the stress of the Intensive Project was exacerbating the symptoms of her Medical Conditions.

51. Williams responded by stating that, since Bolton was back at work, she expected Bolton to be at 100%.

52. Bolton continued overworking herself, despite her doctor's suggestions to the contrary, and finished the Intensive Project on time.

53. On or around June 7, 2021, Bolton's doctor became concerned that Bolton was on the brink of mental collapse and ordered her off work from June 7, 2021, until August 13, 2021.

54. Bolton promptly notified Williams and UH of her need to go back on continuous FMLA leave until August 13, 2021.

55. On or around July 7, 2021, Williams contacted Bolton and informed her that her FMLA would exhaust on July 13, 2021, and if Bolton did not return to work on that date her job would be posted.

56. Bolton's doctor reluctantly cleared Bolton to return to work starting July 13, 2021, on a reduced work schedule of 20 hours per week, so that Bolton would not lose her job.

57. Bolton submitted the doctor ordered accommodation to UH via email.

58. Bolton returned to work on the reduced schedule from July 13, 2021, through July 16, 2021.

59. During this period, Williams informed Bolton that she had not made a final decision about approving Bolton's reasonable accommodation of a temporarily reduced work week.

60. On or around July 14, 2021, Williams asked Bolton if she would be ready to return to work full time starting August 15, 2021.

61. Bolton informed Williams that she could not definitively answer that question and the decision would be up to her doctor.

62. Williams was angered by Bolton's response and stated that it reaffirmed her decision not to grant Bolton her reasonable accommodation.

63. On or around July 15, 2021, Williams informed the Reed Group, UH's third-party leave provider, of her final decision not to grant Bolton's request for reasonable accommodation.

64. On or around July 16, 2021, Williams informed Bolton of her final decision not to grant Bolton her reasonable accommodation.

65. Bolton's doctor, a UH physician, was shocked by the denial of Bolton's reasonable accommodation, as UH previously granted temporarily reduced work schedules to employees in the past.

66. On or around July 17, 2021, Williams informed Bolton that Bolton's employment was terminated due to poor performance.

67. Defendants previously made no mention of any issues regarding Bolton's performance.

68. Defendants only mentioned issues regarding Bolton's performance after she requested a reasonable accommodation.

69. Defendants only mentioned issues regarding Bolton's performance after she returned from FMLA leave.

70. Defendants purported reason for termination was pretextual.

71. On or around July 17, 2021, Defendants terminated Bolton's employment because of her disabilities.

72. On or around July 17, 2021, Defendants terminated Bolton's employment in retaliation for her utilizing FMLA leave.

73. As a result of Defendants' unlawful acts, Bolton has suffered and will continue to suffer damages.

## COUNT I: RETALIATION IN VIOLATION OF THE FMLA

74. Bolton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

75. UH is subject to the provisions of the FMLA.

76. As of October 9, 2018, Bolton qualified for protected leave under the FMLA.

77. As of October 9, 2018, Bolton worked for UH for at least 12 months.

78. As of October 9, 2018, Bolton had at least 1,250 hours of service for UH during the previous 12 months.

79. As of October 9, 2018, Bolton was entitled to use FMLA leave for her own serious health conditions.

80. During her employment, Bolton utilized FMLA leave.

81. After Bolton utilized her qualified FMLA leave, Defendants retaliated against her.

82. Defendants retaliated against Bolton by terminating her employment.

83. Defendants willfully retaliated against Bolton in violation of U.S.C. § 2615(a).

84. As a direct and proximate result of Defendants' wrongful conduct, Bolton is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

85. Bolton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

86. Bolton suffers from Depression and Post Traumatic Stress Disorder.

87. Bolton's conditions constitute a mental impairment.
88. Bolton's conditions substantially impaired one or more of her major life activities, including working.
89. Bolton is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).
90. In the alternative, UH perceived Bolton as being disabled.
91. UH treated Bolton differently than other similarly-situated employees based on her disabling conditions.
92. UH treated Bolton differently than other similarly-situated employees based on her perceived disabling conditions.
93. On or around July 17, 2021, Defendant terminated Bolton's employment without just cause.
94. Defendant terminated Bolton's employment based on her disabilities.
95. Defendant violated R.C. § 4112.02 when it terminated Bolton's employment based on her disabilities.
96. Alternatively, Defendant violated R.C. § 4112.02 when it terminated Bolton's employment based on her perceived disabilities.
97. Defendant violated R.C. § 4112.02 by discriminating against Bolton based on her disabling conditions.
98. Alternatively, Defendant violated R.C. § 4112.02 by discriminating against Bolton based on her perceived disabling conditions.
99. Bolton suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.
100. As a direct and proximate result of Defendant's conduct, Bolton suffered and will continue to suffer damages, including economic and emotional distress damages.

## **COUNT III: FAILURE TO ACCOMMODATE UNDER R.C. 4112.01 *et seq*.**

101. Bolton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

102. Bolton informed Defendant of her disabling conditions.

103. Bolton requested accommodations from Defendant to assist with her disabilities, including a temporarily reduced work schedule of 20 hours per week.

104. Bolton's requested accommodation was reasonable.

105. There was an accommodation available that would have been effective and would have not posed an undue hardship to UH.

106. Defendant failed to engage in the interactive process of determining whether Bolton needed an accommodation.

107. Defendant failed to provide an accommodation.

108. Defendant violated R.C. § 4112.02 by failing to provide Bolton a reasonable accommodation.

109. Bolton suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

110. As a direct and proximate result of Defendant's conduct, Bolton suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Tonae Bolton demands from Defendants the following:

(a) Issue an order requiring UH to restore Bolton to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Bolton for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Bolton's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Taurean J. Shattuck*
Taurean J. Shattuck (0097364)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  Taurean.Shattuck@spitzlawfirm.com

*Attorney For Plaintiff*

## JURY DEMAND

Plaintiff Tonae Bolton demands a trial by jury by the maximum number of jurors permitted.

*/s/ Taurean J. Shattuck*
Taurean J. Shattuck (0097364)
**SPITZ, THE EMPLOYEE'S LAW FIRM**